ROBERT O. GROOVER III
Pro Se
P.O. Box 293748
Lewisville, TX 75029-3748
Email: groover@technopatents.com
Telephone: 214-562-5057
Facsimile: 214-206-9992



*RECEIVED*
2013 JAN -4 AM 10: 57
U.S. BANKRUPTCY COURT
NORTHERN DIST. OF CA.
OAKLAND, CA.

**FILED**
JAN 0 4 2013
U.S. BANKRUPTCY COURT
OAKLAND, CALIFORNIA

UNITED STATES BANKRUPTCY COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| In re | Case No. 12-48131 RLE 7 |
| PICONGEN WIRELESS, INC., | Chapter 7 |
| Debtor. | OFFER TO PURCHASE ASSETS |
| | The Honorable Roger L. Efremsky, United States Bankruptcy Judge |

TO: COUNSEL FOR CHAPTER 7 TRUSTEE, PAUL J. MANSDORF; THE UNITED STATES TRUSTEE; ALL CREDITORS; OTHER INTERESTED PERSONS; THE FOLLOWING DESCRIBED ALLEGED LIEN OR OTHER INTEREST HOLDERS; AND TO THEIR RESPECTIVE ATTORNEYS, IF ANY:

Dale Kluesing
2275 Springwood Drive
Auburn, AL 36830

Averett Family Trust
c/o Ruth Donohue
805 General Cornwallis Drive
West Chester, PA 19382

I, Robert O. Groover III, hereby offer to purchase part of the assets of the debtor Picongen, as detailed below. Including this paper, a Proof of Claim (with evidentiary and summary appendices), an Opposition (with evidentiary appendices) to the Offer submitted by Sai Manapragada and xStream Wireless Works (hereinafter the "Manapragada Group"), a Motion for Leave to File Out

of Time, a Motion to Reschedule or Continue the January 9, 2013 Hearing, and a Creditor's Exhibit and Witness List are also filed simultaneously herewith, and are hereby incorporated by reference.

# 1 Background

1.1 I have been a Registered Patent Attorney since 1980. I have worked on dozens of patent and trade secret lawsuits, and hundreds of patent and trade secret licensing matters. I have worked with a number of entities in patent enforcement matters.

1.2 I am very familiar with the patent properties of Picongen. However, I am not currently in any attorney-client relationship with Picongen.

# 2 Plan for Realization

2.1 I believe that the patent assets of Picongen have significant potential value. However, that value cannot be realized until patents have actually been allowed or issued on Picongen's pending applications. Most of the patent applications currently stand abandoned, but my professional judgement is that I should be able to revive them.

2.2 I would plan to invest a substantial amount of my own professional work in getting these patents to issuance. Estimated value of this future

professional work, at typical going rates, will be in the neighborhood of $30K. I would also plan to borrow $25K, using the patents as security, to pay necessary government and foreign fees. Ownership of the patents would be held by a Texas LLC.

2.3  As the patents progress to issuance, I would be discussing enforcement opportunities with possible partners. At that point I may need to obtain additional financing based on these patent properties, so clear title is essential. At some point I would hope to realize substantial value from these patents – perhaps as much as a million dollars or more. However, that will not happen until at least 2014, and more likely 2015 or 2016.

2.4  I have a unique advantage in realizing this value, due to my familiarity with the Picongen technology, my experience with patent enforcement, and my network of contacts in the patent world.

# 3 My Offer

3.1  The value offered is **$168,554.45**, for only part of the assets of the estate. This includes:

3.1.1  **$10,000** cash.

3.1.2  My asserted administrative priority claim for **$2236**. I incurred this liability to Kilburn & Strode on November 30, in order to keep one of the

patent properties alive.

3.1.3 An additional cash payment of **$25,000**, to be paid by February 28, 2014, or one year after final approval of this sale (including any subsequent proceedings on appeal and/or remand), whichever is later.

3.1.4 My existing lien against the patent properties, admitted by Picongen to be **$103,000**. (I believe that it is more.)

3.1.5 I would assume the two other liens listed by the debtor (but not any other debts). These total **$33,318.45**. This assumption, and release of this lien, would be agreed to by the other two asserted lien holders.

# 4 Other Realizable Value

4.1 My Offer would leave significant value in the estate. The following assets would remain for the Trustee to realize on, with estimated values as follows:

4.1.1 At least **$50,000** which the Debtor lent to Sai Manapragada to complete preparation for demonstration of the prototype system. The entire Manapragada Group has taken advantage of the asset created with this money, and should therefore be treated as joint trustees.

4.1.2 All claims against Sai Manapragada, Ron Moeck, xStream Wireless Works, and all persons who have collaborated in the formation of

xStream Wireless Works or in the diversion of Picongen's business asserts. These claims would presumably include some or all of: breach of fiduciary duty, intentional interference with business relations, breach of contract, and fraud. Since Picongen was reasonably expected to have a valuation of $3M or more once a working prototype had been demonstrated, and since the working prototype was apparently not demonstrated due to wrongdoing, the amount of these claims is at least $3,000,000. Allowing for some discount in settlement of such damages, including the appropriate enhanced damages, this would provide a realizable value of more than **$500,000.**

4.1.3   The physical assets of the estate (computers and video equipment) should be salable for approximately **$5,000** through the Trustee's normal procedures.

## 5 Comparison of Offers

5.1   Note that the xStream offer puts forth only $60,000 in return for (among other value) a $63,000 liquidated claim (by the Trustee's reckoning), and would transfer ALL other value to the Manapragada Group. Specifically, the Manapragada offer ignores the very large amount of value which was lost to Picongen (and is therefore now recoverable by the Estate), due to

wrongful acts of the Manapragada Group.

5.2 It is not in fact true, as implied on Page 4 of the Trustee's Motion of November 30, that about $14,000 has been "advanced by xStream Wireless works to preserve the intellectual property...." This has been proven by the Patent Office statements attached to my Opposition filed herewith.

5.3 On the other hand, I myself have incurred $2,236 in debt (which I will have to pay out on January 15) to keep one of the patent properties from expiring forever. This difference in actions shows that the Manapragada Group is either unable or unwilling to properly manage the patent properties. The Court can see which of these actions is more like that of a responsible owner, and which is that of someone looking for a quick advantage.

5.4 The value to the Estate of my Offer is more than TEN TIMES that of the Manapragada Group's Offer!

| | |
|---|---|
| Groover offer: | $ 168,554. |
| Remaining cash value: | $ 500,000. |
| **Total realized for estate:** | **$ 668,554.** |
| | |
| xStream offer: | $ 60,000. |
| Remaining value: | $ 0. |
| **Total realized for estate:** | **$ 60,000.** |

5.5 By accepting the Groover Offer, all further appeals and challenges will

be avoided, as there are no other priority claims.

5.6  If the Affidavits of Bartlett and Kluesing are believed, it appears that significant chicanery may have occurred. A hasty decision in favor of those who may have perpetrated a fraud would not only be unjust to other creditors, but would not maximize the liquidity of the estate.

5.7  If such wrongful behavior has in fact occurred, it would be insulting to this Court, and to the bankruptcy court system, to allow it to succeed. If such behavior has not occurred, this Court should be satisfied of that.

5.8  The Manapragada Group's Offer assumes that several issues can be disposed of without an Adversary Proceeding. This would be grossly unjust, as shown by the accompanying filings and evidence. By contrast, if my group's Offer is accepted, no lien holders would have reason to dispute this Court's action.

The Trustee should maximize the value of the estate. Both justice and economics require that the Manapragada Group's offer should not be accepted at this time.

Date: January 3, 2013          Respectfully submitted,

*[signature]*

Robert O. Groover III
Pro Se
P.O. Box 293748
Lewisville, TX 75029-3748
Email: groover@technopatents.com
Telephone: 214-562-5057
Facsimile:  214-206-9992

## CERTIFICATE OF SERVICE

I hereby certify that the original of this document is being sent via FedEx to the United States Bankruptcy Court, Northern District of California, Oakland Division; and that true and correct copies are being sent via FedEx to Dale Kluesing; Sai Manapragada (Petitioning Creditor); Paul Mansdorf, Counsel for Trustee; and Stephen K. Rush, Counsel for Ronald W. Moeckel (Petitioning Creditor).  Advance copies were also sent by email on January 3, 2013 to Dale Kluesing; Sai Manapragada (Petitioning Creditor); Paul Mansdorf, Counsel for Trustee; and Stephen K. Rush, Counsel for Ronald W. Moeckel (Petitioning Creditor).

*[signature]*
Robert O. Groover III