ROBERT O. GROOVER III
Pro Se
P.O. Box 293748
Lewisville, TX 75029-3748
Email: groover@technopatents.com
Telephone: 214-562-5057
Facsimile: 214-206-9992



RECEIVED
2013 JAN -4 AM 10: 57
U.S. BANKRUPTCY COURT
NORTHERN DIST. OF CA.
OAKLAND, CA.

UNITED STATES BANKRUPTCY COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

FILED
JAN 0 4 2013
U.S. BANKCRUPTCY COURT
OAKLAND, CALIFORNIA

In re

PICONGEN WIRELESS, INC.,

    Debtor.

Case No. 12-48131 RLE 7

Chapter 7

OPPOSITION TO PROPOSED SALE

Date: January 9, 2013
Time: 2:00 p.m.
Place: Courtroom 201

The Honorable Roger L. Efremsky,
United States Bankruptcy Judge

TO: COUNSEL FOR CHAPTER 7 TRUSTEE, PAUL J. MANSDORF; THE UNITED STATES TRUSTEE; ALL CREDITORS; OTHER INTERESTED PERSONS; THE FOLLOWING DESCRIBED ALLEGED LIEN OR OTHER INTEREST HOLDERS; AND TO THEIR RESPECTIVE ATTORNEYS, IF ANY:

Dale Kluesing
2275 Springwood Drive
Auburn, AL 36830

Averett Family Trust
c/o Ruth Donohue
805 General Cornwallis Drive
West Chester, PA 19382

Robert Groover hereby opposes the offer presented by Sai Manapragada and xStream Wireless (hereinafter "the Manapragada Group"), and offers the following reasons why it should be rejected. Appended hereto are an Affidavit

of David Bartlett, an Affidavit of Dale Kluesing, and other evidence. A Proof of Claim (with evidentiary and summary appendices), an Offer to Purchase Assets, a Motion for Leave to File Out of Time, a Motion to Reschedule or Continue the January 9, 2013 Hearing, and a Creditor's Exhibit and Witness List are also filed simultaneously herewith, and are hereby incorporated by reference.

# 1 Background

1.1 I have been a Registered Patent Attorney since 1980, and have written and prosecuted many hundreds of high-tech patent applications.

1.2 Picongen Inc. retained me early in 2008 to write nonprovisional and PCT (international) patent applications for them. This was under tight time constraints, since the patent filings had to be completed by June 11, 2008 (when their provisional filings were expiring). I and my colleagues worked hard to prepare and file five pairs of nonprovisional and PCT (international) patent applications (ten applications total, totaling many hundreds of pages). These claimed priority from provisionals which had been filed in 2007, but also contained many new claims and other material. I had face-to-face meetings with Picongen's

officers in San Jose, and communicated extensively by telephone and email.

1.3     Picongen had told me before I started work that they had their financing lined up, but would not have the cash in hand until July of 2008. I agreed that payment then would be soon enough.

1.4     After I and my colleagues were well along with work on the applications, Picongen told me that their financing had fallen through. They said they were still trying to raise money, but did not have any other money to pay me with. I told them that I was willing to complete work on the initial filings, if my fee payment was secured by the patent applications themselves. Picongen agreed to this, and I completed preparation and filing of their ten patent applications. Assurances of imminent payment continued, and we sent monthly invoices to Picongen for our work, but we have never been paid for our work in 2008. None of these invoices have been contested.

1.5     Picongen's failure to pay me for my firm's work caused me grave problems in 2009 and 2010, since I still had to pay my associate attorneys and my overhead expenses. (I am still, today, making payments on a debt to one of my associate attorneys for her work in those years.)

1.6     In 2010 Office Actions were issuing on the pending US applications. In that time period I told Dale Kluesing that, in order to do any further work on Picongen, I needed confirmation of my lien on the patent properties for all my unpaid billings, past and future. He agreed to this.

1.7     I introduced Picongen to several investors, including the investors who actually came to see the third live demonstration. Arranging these introductions took a significant amount of my time, but I did not bill Picongen for this time, and this is not asserted as a basis for my lien against the patent properties.

1.8     Subsequently Picongen fell behind on payments to me and to the Patent Office. I limited my work accordingly, and finally withdrew from representation. Most of the U.S. Patent applications now have a status of "abandoned."

## 2 Objection 1: Unclean Hands

2.1     The Bartlett and Kluesing Affidavits appear to show that Mr. Manapragada either recklessly failed to complete or intentionally sabotaged the crucial demonstration to investors. The failure to demonstrate Picongen's technology to investors led directly to the

failure of Picongen. The failure of Picongen has Mr. Manapragada's fingerprints all over it.

2.2     If the testimony in the Kluesing and Bartlett Affidavits is truthful, then it appears that there may have been a scheme by some of the officers and directors of Picongen to breach their fiduciary duty to the company, in order to gain advantage against other principals of the company. This appearance of fraud or misconduct should be investigated. Mr. Manapragada himself and the Manapragada Group should be precluded from taking advantage of their apparent misconduct.

# 3 Objection 2: Concealed Assets

3.1     This offer ignores or denigrates Picongen's key operating asset: that is the working system and software design which is in the possession of Mr. Manapragada. That, and the business plan to exploit it, are the "crown jewel" assets of this debtor. The "Xstream" company is directed to wireless video, and appears to be directed specifically to profit from the assets whose loss destroyed Picongen.

## 4 Objection 3: Diversion of Estate Assets

4.1     It is undisputed that a liquidated debt of at least $50,000 is owed to the estate by Mr. Manapragada. This money was advanced to him to complete the prototype which was not demonstrated for Picongen's investors. It is inequitable for Mr. Manapragada and his associates to use money which should be assets of the estate as purported outside money to grab the entire estate.

## 5 Objection 4: I, not the Manapragada Group, Have Paid to Maintain the Patent Properties

5.1     The offer suggests that offerors have paid fees on the patent properties. That is not in fact true. This is shown by the attached five printouts from the US Patent Office website. (This is a publicly available official record, and is attested by my Affidavit below.) This false or misleading statement suggests that the whole Offer should be scrutinized carefully.

5.2     In this same record, it can also be seen that various payments are marked as "Deposit Account". Each of those payments was made by me or my firm. That includes $105 on 9/16/2008, $230 on 9/5/2008, $245 on 5/24/2010, $810 and $405 on 2/25/2011, $555 on 6/21/2011,

$635 on 9/27/2011, and $865 on 7/24/2012. These payments have not been reimbursed except for the partial payments shown on the attached spreadsheet.

5.3 One of the European patent properties had an inextensible fee payment deadline of November 30, 2012, and this payment was not made by the Manapragada Group. Instead, I myself arranged for this payment at the last minute, after discussion with trustee's attorney, to preserve the value of the estate. No similar action appears to have been performed at any time by the Manapragada Group.

# 6 Objection 5: California Attorney's Lien

6.1 An attorney's lien on all of the patent assets was properly granted by the debtor to me, for consideration, in 2009 or earlier. The existence of this lien has been confirmed to the Trustee in writing by the debtor. This lien was properly and timely perfected by a filing in the California Secretary of State's office.

6.2 The debtor's operations, at all relevant times, were based entirely in California. The debtor has NOT been a Delaware corporation since at least 2009 (when its Delaware charter lapsed). California is the most relevant location for choice of law purposes. California law does not

provide any reason to refer to Delaware law nor to Delaware filing requirements. Therefore, the reference to Delaware recordation is a red herring.

6.3 I was induced to continue to work for Picongen's benefit, despite the huge unpaid balance, by representation that any attorney's lien on the patent properties was valid. Sai Manapragada was an officer and principal of Picongen at that time, and Mr. Ron Moeckel may have been a director at relevant times. Mr. Manapragada himself and the Manapragada Group should now be estopped to deny the validity of the lien which was granted to obtain value from me.

6.4 I contend that there is no bona fide dispute over the existence of an attorney's lien. The trustee's attorney has averred that the lien is in dispute, but that statement does not itself establish any "bona fide" dispute.

# 7 <u>Objection 6: Equitable Lien</u>

7.1 All of the patent assets are and should be subject to an equitable lien in my favor. These assets were created in 2008 under an initial contract for payment which was not fulfilled. I continued work on these properties only with an express confirmation of an attorney's lien for all

our unpaid billing. I and my attorneys have invested over a hundred hours of unpaid attorney time in creating these properties, on the understanding that the properties were security to assure payment. It would be grossly unfair to transfer the property out from under those who created it and who relied on it for their compensation.

# 8 Objection 7: To Purported Manapragada Employment Contract

8.1     The offer relies on an alleged contract under which more than a million dollars is purportedly owed by the debtor to Sai Manapragada. If such a contract did exist, it is avoidable and should be voided, for several reasons:

8.1.1    IF such a contract exists, it is unreasonable on its face.

8.1.2    IF such a contract exists, it is operating improperly to drain the bankruptcy estate for Mr. Manapragada's benefit.

8.1.3    If such a debt exists it was been continuously concealed from me up until late 2012, and Mr. Manapragada and the Manapragada Group should be estopped to rely on any such debt now, particularly as against me and my company. I am an arms-length creditor, and Mr. Manapragada is not.

8.1.4    The Bartlett and Kluesing Affidavits appear to show that Mr.

Manapragada either recklessly failed to complete or intentionally sabotaged the crucial May 11 demonstration to investors. If this is in fact the case, the Manapragada Group should be precluded from taking advantage of that failure, especially as against the undersigned. I had expected to get payment on my overdue invoices from the proceeds of the investments for which that demonstration (and the expected subsequent demonstrations) was a part of the due diligence. In fact, I believe that the investors who attended the May 11 planned demonstration to Picongen were a group whom I myself had introduced.

8.1.5  The existence of any such valid contract is rebutted by the existence of a note signed by Mr. Manapragada to Picongen - since if such a debt existed the cash advance could have been treated as a reduction in that debt, rather than a new debt in the other direction.

## List of Appendices

A.  Affidavit of Dale Kluesing

B.  Affidavit of David Bartlett

C.  Copies of U.S. Patent Office fee records

D.  Copy of fee payment confirmation, and transmittal letter, from Kilburn

& Strode, London.

E. Affidavit of Robert Groover

Date: January 3, 2013               Respectfully submitted,

                                    [signature]

                                    Robert O. Groover III
                                    Pro Se
                                    P.O. Box 293748
                                    Lewisville, TX 75029-3748
                                    Email: groover@technopatents.com
                                    Telephone: 214-562-5057
                                    Facsimile: 214-206-9992

**CERTIFICATE OF SERVICE**

I hereby certify that the original of this document is being sent via FedEx to the United States Bankruptcy Court, Northern District of California, Oakland Division; and that true and correct copies are being sent via FedEx to Dale Kluesing; Sai Manapragada (Petitioning Creditor); Paul Mansdorf, Counsel for Trustee; and Stephen K. Rush, Counsel for Ronald W. Moeckel (Petitioning Creditor). Advance copies were also sent by email on January 3, 2013 to Dale Kluesing; Sai Manapragada (Petitioning Creditor); Paul Mansdorf, Counsel for Trustee; and Stephen K. Rush, Counsel for Ronald W. Moeckel (Petitioning Creditor).

[signature]

Robert O. Groover III