JEREMY W. KATZ (SBN: 119418)
PINNACLE LAW GROUP LLP
425 California Street, Suite 1800
San Francisco, CA 94104
Email: jkatz@pinnaclelawgroup.com
Telephone: (415) 394-5700
Facsimile: (415) 394-5003

Attorneys for Chapter 7 Trustee
PAUL J. MANSDORF

UNITED STATES BANKRUPTCY COURT FOR

THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>PICONGEN WIRELESS INC.,<br><br>Debtor. | Case No. 12-48131 RLE 7<br><br>Chapter 7<br><br>TRUSTEE'S REPLY TO ROBERT O. GROOVER III'S OPPOSITION TO PROPOSED SALE (Docket No. 28); TRUSTEE'S OBJECTION TO MR. GROOVER'S MOTION FOR LEAVE TO FILE LATE OPPOSITION (Docket No. 24); AND TRUSTEE'S OBJECTION TO MR. GROOVER'S MOTION TO CONTINUE HEARING (Docket No. 25)<br><br>Date: January 9, 2013<br>Time: 2:00 p.m.<br>Place: Courtroom 201<br><br>The Honorable Roger L. Efremsky, United States Bankruptcy Judge |

Bankruptcy Code § 704(a)(1) requires a bankruptcy trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest[.]" In other words, a bankruptcy trustee must liquidate assets for the benefit of creditors and not enter into speculative deals that will require the estate to remain open for years, require expensive and time-consuming litigation, and may not result in any greater distribution for creditors. The latter is what Robert O.

Groover III wants the Trustee to do, which will only benefit Mr. Groover and will make any distribution to creditors speculative.

The sale proposed by the Trustee to xStream Wireless Works will bring $60,000 cash into the estate and will result in the withdrawal of $1.7 million in claims against the estate. Mr. Groover's offer gives the estate $10,000 cash plus maybe an additional $25,000 in a year or so. That's it for cash. Any other monies the estate receives from Mr. Groover's offer will have to come from the Trustee's protracted and expensive litigation, and the estate has no money to fund it. And even if the litigation is pursued, the outcome is speculative. Mr. Groover's opposition should be overruled, his pleadings should be stricken as untimely, and his request for a continuance of the hearing should be denied.[1]

The case was originally filed as an involuntary petition. An order for relief was subsequently entered and the Trustee was appointed. The Trustee learned that several patent applications had expired and some were about to expire, but there was no estate money to pay for their renewal. He was contacted by xStream Wireless Works and negotiated a sale to xStream Wireless Works, subject to bankruptcy court approval and overbid procedures, that would ensure that the relevant patent applications did not expire pending court approval of the sale and that the estate would realize money for creditors.

On November 30, 2012, the Trustee filed his Motion for Order Approving Sale of Substantially all Assets of the Bankruptcy Estate Free and Clear of Certain Claims of Lien and other Interests (the "Sale Motion"), including Mr. Groover's alleged attorney's Lien. See Docket Nos. 15-17. Mr. Groover had contacted the Trustee's counsel, Jeremy W. Katz, more than two weeks prior to the filing of the Motion. Mr. Groover claimed he had an attorney's lien and wanted to make an offer for the intellectual property. Mr. Katz requested a copy of Mr.

---

[1] Mr. Groover purports to be acting *pro se*. However, he is not acting in his own behalf--he is attempting to enforce an alleged attorney's lien which apparently is not in his own name but in the name of Groover & Associates PLLC. A company must be represented by a lawyer admitted in this jurisdiction. Mr. Groover is not listed as a California attorney on the State Bar's website and he has not been admitted *pro hace vice* in this case. Mr. Groover has filed a proof of claim in his own name for services rendered to the Debtor, but according to the time entries attached to the proof of claim, the services were provided by Groover & Associates, Storm LLP, and Glast, Phillips & Murray, a Professional Corporation. Again, these entities must be represented by a lawyer licensed to practice in this jurisdiction.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

Groover's fee agreement with the Debtor (so Mr. Katz could analyze the validity of the alleged attorney's lien), but Mr. Groover never produced it. The conclusion to draw is that no written fee agreement exists. In Mr. Groover's Opposition to Proposed Sale (the "Opposition"), Mr. Groover states that "[t]he existence of this lien has been confirmed to the Trustee in writing by the debtor." Opposition, 7:6.1. Mr. Groover is apparently referring to the Affidavit of Dale Kluesing in which Mr. Kluesing states that Mr. Kluesing agreed that the patents could "be security for payment of his fees." Kluesing Affidavit, ¶4. But an oral agreement does not create an enforceable attorney's lien in California—there must be a writing which complies with certain provisions of California law as to adverse interests.

As the Trustee has argued in the Motion, Groover's alleged attorney's lien is in bona fide dispute. In California, an attorney's lien is created by contract. *Fletcher v. Davis,* 33 Cal.4th 61, 66 (2004). In addition, an attorney's lien is an interest adverse to the client, so the attorney must comply with the requirements of Rule 3-300 of the Rules of Professional Conduct of the State Bar of California. *Id.,* at 71. Here, Groover has not provided the Trustee with any contractual agreement purporting to grant Groover an attorney's lien. Consequently, the Trustee has no evidence of any such lien and the alleged attorney's lien is in bona fide dispute. That is all that is required to approve the sale free and clear of Mr. Groover's alleged attorney's lien under Bankruptcy Code § 363(f)(4). It is not the Court's responsibility to determine the validity of the alleged lien prior to the sale, only that there is a bona fide dispute. "'A sale free and clear from liens may be ordered before the validity and priority of the liens have been determined, the controversies being transferred to the funds.' [Citations.]" *Coulter v. Blieden,* 104 F.2d 29, 32 (8th Cir. 1939).

The Motion also has overbid procedures. "The sale is subject to overbids. The first overbid for the Assets shall be $70,000 PLUS all monies advanced by xStream Wireless Works to preserve the intellectual property estimated to be approximately $14,000, and bidding will continue in $1,000 increments thereafter. Overbidding will take place at the hearing on the Motion. Anyone wishing to overbid must submit a cashier's check in the amount of $70,000 made payable to "Paul J. Mansdorf, Trustee" plus proof of ability to perform no later 5:00 p.m.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

| | |
|---|---|
| 1 | PST on Wednesday, December 26, 2012, to the Trustee's counsel, Jeremy W. Katz, Pinnacle Law |
| 2 | Group LLP, 425 California Street, #1800, San Francisco, CA 94104, Tel: (415) 394-5700. The |
| 3 | Trustee reserves the right in his sole discretion to disqualify any prospective overbidder whom he |
| 4 | believes will not be able to perform. If xStream Wireless Works is not the successful buyer, the |
| 5 | Trustee will refund to it the monies it advanced to preserve the intellectual property." Mr. |
| 6 | Groover has not complied with those procedures either in form or in substance. And, because Mr. |
| 7 | Groover's offer is speculative, there is no proof that he can perform. |

In the Opposition, Mr. Groover makes it abundantly clear that the involuntary bankruptcy was the culmination of a failed start-up that was unable to generate sufficient funding to bring its product to market. Mr. Groover himself is one casualty—he was not paid for his legal services for more than four years. Perhaps there is blame to go around for the failure of the company, but that is mere speculation. It is common knowledge that most start-ups fail.

The Trustee's proposed sale to xStream Wireless Works brings $60,000 cash into the estate plus a waiver of approximately $1.7 million in claims without the need for litigating claims (which will likely eat up much, if not all, of the $60,000). Mr. Groover's offer brings $10,000 into the estate, with promises of $25,000 more in a year or so, plus a waiver of approximately $140,000 in claims. The rest is pure speculation. If Mr. Groover believes the alleged causes of action are so valuable, he should have made an appropriate overbid for the assets so he could purchase and pursue them. He did not. The proof is in the pudding.

[THIS SPACE INTENTIONALLY LEFT BLANK]

1871.107     4     Reply to Groover's Opposition to Sale, etc.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

Case: 12-48131   Doc# 29   Filed: 01/07/13   Entered: 01/07/13 16:47:08   Page 4 of 5

Under applicable legal standards, approval of a sale is appropriate if the court finds that the transaction represents a reasonable business judgment by the trustee. *Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996); *In re Abbots Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986); *In re Wild Horse Enter., Inc.,* 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991). Nothing in the Opposition changes the Trustee's business judgment in proposing to sell the assets to xStream Wireless Works.

Date: January 7, 2013    PINNACLE LAW GROUP LLP

By: ___Jeremy W. Katz___
JEREMY W. KATZ
Attorneys for Trustee
PAUL J. MANSDORF