JEREMY W. KATZ (SBN: 119418)
LINDA SORENSEN (SBN: 72753)
PINNACLE LAW GROUP LLP
425 California Street, Suite 1800
San Francisco, CA 94104
Email: jkatz@pinnaclelawgroup.com
Telephone: (415) 394-5700
Facsimile: (415) 394-5003

Attorneys for Chapter 7 Trustee
PAUL J. MANSDORF

UNITED STATES BANKRUPTCY COURT FOR

THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>PICONGEN WIRELESS INC.,<br><br>Debtor. | Case No. 12-48131 RLE 7<br><br>Chapter 7<br><br>TRUSTEE'S FURTHER SUPPORT OF AUCTION SALE AND PRELIMINARY OPPOSITION TO DEBTOR'S MOTION TO CONVERT TO CHAPTER 11<br><br>Date: January 22, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom 201<br><br>The Honorable Roger L. Efremsky, United States Bankruptcy Judge |

On January 9, 2013, this Court overruled objections to the Trustee's proposed auction sale of Debtor's assets free and clear of liens, as reflected in the order entered January 16, 2013 [ECF # 32]. On the eve of conducting Trustee's auction sale of Debtor's assets in court on January 22, 2013, on the last business day prior to a morning hearing, a third party's attorney of record in the Case yet ostensibly representing the Debtor, has filed a motion to convert the Chapter 7 case to Chapter 11, citing new management and claiming vaguely to have a plan of reorganization in mind. Attorney Patrick Costello has requested that the Trustee not proceed with the auction. The

overbidder Sigma Group wishes to proceed with the auction. Upon inquiry, Objector Robert O. Groover, III, apparently does not want the Trustee to proceed.

The Trustee urges the Court to proceed with confirmation of the auction sale, grant a good faith finding, and that thereby the assets of the bankruptcy estate shall be preserved and their value realized for the constituents of the Case. Not merely incidentally, the Trustee's contractual obligations to bidders will appropriately be performed. Attorney Costello, purporting to address the Court on behalf of a hopeful debtor-in-possession, presents no compelling cause for deviation from this sale to the highest bidder, pursuant to an ongoing and previously approved course of action that has required a not insignificant investment of resources by the Trustee and others – at the behest of attorney Costello's client(s).

The Trustee opposes the conversion to Chapter 11 as in bad faith and an attempt to abuse the process of this Court. Attorney Costello presents the matter as if all that were required is a bare motion and the result will follow, contrary to *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S.Ct. 1105 (2007). The principles of *Marrama* are applicable to conversion from Chapter 7 to Chapter 11. *In re Levesque*, 473 B.R. 331 (BAP 9th Cir. 2012).

The record in this Court demonstrates the bad faith involved in a last-minute tactic where an insider apparently does not want to pay the full value of the assets, fair and square against an overbidder it did not plan for. This sale procedure has gone too far for the warring insiders to call an "oops" and start over again. And the "new management" is estopped from employing the tactic.

Prior to commencing the involuntary petition, attorney Costello in writing on June 19, 2012, on behalf of his client, Debtor's then-president and shareholder Mr. Sai Manapragada, approached other shareholders with a threat of Chapter 7 bankruptcy of the company if they did not agree to have their shares diluted as part of obtaining funds for the company. See Exhibit B to a declaration of attorney Costello filed on January 9, 2013 in support of the auction sale [ECF #30-2], attached hereto as Exhibit "A" for convenient reference. Attorney Costello disclosed that Mr. Manapragada would seek to acquire the assets of the company in a Chapter 7.

Attorney Costello filed the involuntary petition on October 3, 2012 [ECF #1]. On behalf

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

of xStream Wireless Works, Inc. ("xStream"), attorney Costello represented the "stalking horse" buyer in a $60,000 cash offer, urging the Trustee that the buyer required a fast closing and that several patent applications had expired and some were about to expire, with no estate money to pay for their renewal. The Trustee negotiated a sale to xStream Wireless Works, subject to bankruptcy court approval and overbid procedures that would ensure that the relevant patent applications did not expire pending court approval of the sale and that the estate would realize money for creditors. On November 30, 2012, the Trustee filed his Motion for Order Approving Sale of Substantially all Assets of the Bankruptcy Estate Free and Clear of Certain Claims of Lien and other Interests (the "Sale Motion") [ECF #15-17].

The Trustee disclosed the connections of the buyer with the Case as follows in his sale motion [ECF #15-1, page 4]: "The Trustee is informed that Sai Manapragada was one of the founders of the Debtor and principally responsible for the creation of the intellectual property. Sai Manapragada is also one of the petitioning creditors. The Trustee is further informed that Sai Manapragada is a principal of the proposed buyer xStream Wireless Works. The Debtor allegedly made a loan to Sai Manapragada in the approximate amount of $63,000; however, Sai Manapragada asserts that the Debtor owes him in excess of $1 million on account of his employment contract and that Sai Manapragada may off-set that amount against the loan from the Debtor."

A person may not take advantage of the case he has set in motion as Mr. Manapradada has done, and then change position. In *In re R.S. Pinellas Motel Partnership*, 5 B.R. 269 (Bankr. M.D.Fla. 1980), Judge Paskay estopped a movant from seeking dismissal of a partnership bankruptcy case when he had participated advantageously in the case. A material issue was that he had caused a trustee to be appointed, who would not be paid if the case were dismissed. Here, Mr. Manapragada chose the Chapter 7 for his own reasons, hoping to profit by the emergency to liquidate fragile assets - obtaining them for a low price. He chose not to fund a Chapter 11 reorganization. By the sale of the majority of Debtor's assets that he once proposed and would be bound to if confirmed by the Court, the Case would essentially be over, with distributions as set forth in the United States Bankruptcy Code. Movant here proposes no plan, but no possible plan

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

1871.107     3     Support of Auction Sale, etc.

Case: 12-48131    Doc# 37    Filed: 01/18/13    Entered: 01/18/13 16:05:56    Page 3 of 4

could be competitive for the best interests of creditors than the Trustee's auction sale. How could assets of this magnitude afford the costs of a Chapter 11, and not render the results to creditors illusory? Mr. Manapragada has bound himself to buy the assets by a bidding process, and should not be permitted to escape from liquidating the assets by that means.

*Marrama* and *Levesque* teach that in applying Section 1106(a) of the United States Bankruptcy Code, the totality of the circumstances must be reviewed in order to determine whether the Debtor remains a typical or instead an "atypical" or "bad faith" debtor, and to prevent abuse of process. Acquisition of control of Debtor's assets through stock and management control transactions is something that could once have been pursued, but the Trustee urges the Court to find that the attempt to do so now is in bad faith and would be an abuse of the process of this Court. What should occur is sale of the assets during the Chapter 7, and if so, there would be no grounds for the case to be in Chapter 11.

Certain persons may urge the Court to defer the auction sale so that the issues can be further explored. However, it is not the Trustee nor the overbidder who have chosen to throw a last-minute issue into what was not previously controversial. There is nothing in the Code that states that an auction sale once approved is reversed by conversion to Chapter 11, nor that the conversion has to occur in a manner that might permit a debtor under Mr. Manapragada's control to refuse to perform the sale were Mr. Manapragada's company not the successful bidder. The current timing tactic argues for permitting the sale to close before the Court even considers the motion to convert to Chapter 11.

Date: January 18, 2013  PINNACLE LAW GROUP LLP

By:   Jeremy W. Katz
     JEREMY W. KATZ
     Attorneys for Trustee
     PAUL J. MANSDORF

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700