JEREMY W. KATZ (SBN: 119418)
LINDA SORENSEN (SBN: 72753)
PINNACLE LAW GROUP LLP
425 California Street, Suite 1800
San Francisco, CA 94104
Email: jkatz@pinnaclelawgroup.com
Telephone: (415) 394-5700
Facsimile: (415) 394-5003

Attorneys for Chapter 7 Trustee
PAUL J. MANSDORF

UNITED STATES BANKRUPTCY COURT FOR

THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>PICONGEN WIRELESS INC.,<br><br>Debtor. | Case No. 12-48131 RLE 7<br><br>Chapter 7<br><br>TRUSTEE'S OPPOSITION TO SOMEONE'S MOTION TO CONVERT CASE FROM CHAPTER 7 TO CHAPTER 11<br><br>Date: February 13, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom 201<br><br>The Honorable Roger L. Efremsky, United States Bankruptcy Judge |

Paul Mansdorf, Chapter 7 trustee ("Trustee") opposes the pending motion to convert the Chapter 7 case to Chapter 11.

The Trustee further reports that as of the filing of this Opposition, the "Debtor" has been playing "keep-away" games with the assets that were bid for and were authorized by this Court's order to be sold. On the other hand, as far as the Trustee can tell, winning bidder Sigma Group seems to be playing "cold feet" games, making "delivery" demands upon Trustee. The Trustee has received no funds.

The Trustee has been told that the Debtor's tangible assets are in Mr. Manapragada's garage, that anyone interested in the intellectual property should consult attorney Groover (rather

1871.107      1      Trustee's Opposition to Conversion

than obtaining any turnovers or disclosures from Debtor), and that none of current management and involved attorneys knows the location of the Debtor's books and records and promissory notes of Mr. Manapragada, and therefore the Trustee should chase former management of Debtor for the information. Presumably, the winning bidder can conduct these gathering activities. But attorney Patrick Costello challenges the rights to the books and records, without any standing to do so.

**NATURE AND STATUS OF THE MOTION TO CONVERT**

The status of the pending motion to convert the Case to Chapter 11 is unclear. Which entity filed the motion is also unclear. Mr. Costello filed a perfunctory two-paragraph motion to convert in his capacity as "Proposed Special Bankruptcy Counsel for Picongen Wireless Inc." [ECF#34]. The Debtor has never had counsel in this case. Mr. Costello filed an involuntary bankruptcy petition against the Debtor in his capacity as attorney for petitioning creditors Ronald Moeckel, Ankit Sahu, Max Lightfoot, and Mr. Manapragada. [ECF#1] An order for relief was stipulated to by the Debtor's CEO, Dale Kluesing. Before representing the petitioning creditors, Mr. Costello represented insider Mr. Manapragada. After an order for relief was entered, Mr. Costello represented Mr. Manapragada's company, xStream Wireless Works, Inc. in its offer to purchase the assets of the estate. At the January 22, 2013, in-court auction, Mr. Costello represented bidder xStream Wireless AND acted as proposed special bankruptcy counsel for the Debtor. [ECF#41] That alone is a conflict of interest. Now, Mr. Costello has filed a Notice of Appeal from the sale order in which he represents shareholders Mr. Manapragada, Ankit Sahu, Ronald Moeckel, Shara Kumar Yempati, and Max Lightfoot. [ECF#45] Interestingly, in the involuntary petition, Mr. Costello represented Messrs. Manapragada, Moeckel, Sahu, and Lightfoot in their capacity as creditors of the Debtor. There are many people wearing many hats in this case.

Mr. Costello refuses to accept any of the responsibilities of representing a debtor in an ongoing bankruptcy case. (See Declaration of Jeremy Katz in support of the Trustee's opposition.) Mr. Costello would not be approved by the Court for employment as counsel for the debtor-in-possession. He would not have undivided loyalty to the Debtor's bankruptcy estate.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

Mr. Costello asserts that he is "special counsel" and has no other responsibilities than the motion to convert. Likely enough, he is preserving his representation of Mr. Manapragada and offeror xStream Wireless Works. But the motion to convert is a central matter of the Debtor's Chapter 7 and Chapter 11 participation, "conducting the case," and neither has any court authorized a piecemeal representation nor is there support for doing so. 11 U.S.C. §327(c), (e). A lawyer for a potential buyer should not represent the debtor because of the inherent conflict. *I.G.Petroleum, LLC v. Fenasci (In re W. Delta Oil Co.),* 432 F.3d 347 (5th Cir. 2005).

The Debtor, a corporation, cannot legitimately be a debtor-in-possession without being represented by counsel, and without an individual who takes responsibility for Debtor's duties. Counsel's employment must be approved by the Court. No DIP attorney has been proposed. No responsible individual has been identified.

The Debtor cannot legitimately be a debtor-in-possession if it does not demonstrate compliance with the United States Bankruptcy Code. To all appearances, Mr. Costello's "current clients," having ousted the persons who were in control of Debtor prior to the January 22, 2013 auction sale, have decided that they have no obligation to comply with Debtor's Section 521 duties. Mr. Costello posits that the Trustee must chase the previous management for assets, books and records, and information, and turn that over to new management of Debtor. That is not how it works. Rather, Mr. Costello's version of the situation yields the conclusion that there is no reality or performance capability residing in "current management" and neither they nor the Debtor can possibly be put in charge of a bankruptcy estate or conduct a legitimate reorganization.

**THE FACTS ESTABLISH BAD FAITH**

If the current motion is prosecuted not by the Debtor but instead by Mr. Manapragada, as appears to be the substance behind Mr. Costello's activities, then what is pending is not a Section 706(a) conversion motion, but instead a Section 706(b) motion addressed to this Court's discretion, where the movant(s) have provided no grounds for concluding that conversion is appropriate. Indeed, Mr. Manapragada's interests as hopeful asset acquirer are in irreconcilable conflict with those of the bankruptcy estate – which therefore needs a neutral fiduciary to be in

charge. Since there is no operating business to reorganize, there is no need for that fiduciary to be a Chapter 11 trustee instead of a Chapter 7 trustee.

But since the motion is presented on the pretext of effectuating the Debtor's right of conversion absent cause for denial, the Trustee will focus on the facts that support denial of Section 706(a) conversion for bad faith. The record in this Court demonstrates the bad faith involved in a last-minute tactic where an insider apparently does not want to pay the full value of the assets, fair and square against an overbidder he did not plan for. This sale procedure has gone too far for the warring insiders to call a "do-over." And the "new management" is estopped from employing the tactic.

It is not unheard of for an insider or insiders to use a bankruptcy filing to acquire a corporation's valuable assets for himself/herself and to clean away other equity holders as well as creditor claims. But there are right ways and wrong ways to go about it. Genuine, without hindrance, exposure of the assets to real, competitive bidding for cash, with an arms-length fiduciary such as a trustee in charge and deciding about the options actually available in the circumstances, can be a right way. Winning the bidding by paying more than anyone else is willing to pay tends to cure the problems otherwise inherent in sales to insiders. Chilling other bids, disparaging the assets, activating "poison pill" tactics intended to convince other bidders that there will be an uphill battle after the auction, playing hide-and-seek with the assets after NOT paying more than the other guy(s) – those kinds of events fail to cure the problems inherent in sales to insiders. Trying to get rid of the arms-length fiduciary and take over the liquidation because the arms-length method didn't provide an unfair advantage to Mr. Manapragada, is something that the Court should not permit precisely because it is an abuse of the bankruptcy system. Trying to obtain conversion to evade legitimate bidding, and persisting with the motion in hopes of undoing the outcome of the bidding and this Court's order can only be described as "bad faith."

In prior filings, the Trustee pointed out that a few months before filing the involuntary petition, Mr. Costello in writing on June 19, 2012, on behalf of his client, Debtor's then-president and shareholder Mr. Manapragada, approached other shareholders with a threat of Chapter 7

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

bankruptcy of the company if they did not agree to have their shares diluted as part of obtaining funds for the company. See Exhibit B to a declaration of attorney Costello filed on January 9, 2013 <u>in support of the auction sale</u> [ECF #30-2]. For the Court's convenience, the letter is attached to Mr. Katz's declaration in support of this Opposition as Exhibit "A." Mr. Costello disclosed that Mr. Manapragada would seek to acquire the assets of the company in a Chapter 7.

Mr. Costello filed the involuntary petition on October 3, 2012 [ECF #1]. Subsequently, on behalf of xStream Wireless Works, Inc. ("xStream"), Mr. Costello represented the "stalking horse" buyer in a $60,000 cash offer, urging the Trustee that the buyer required a fast closing and that several patent applications had expired and some were about to expire, with no estate money to pay for their renewal. The Trustee negotiated a sale to xStream Wireless Works, subject to bankruptcy court approval and overbid procedures that would ensure that the relevant patent applications did not expire pending court approval of the sale and that the estate would realize money for creditors. On November 30, 2012, the Trustee filed his Motion for Order Approving Sale of Substantially all Assets of the Bankruptcy Estate Free and Clear of Certain Claims of Lien and other Interests (the "Sale Motion") [ECF #15-17].

The Trustee disclosed the connections of xStream as the buyer with the Case as follows in his sale motion [ECF #15-1, page 4]: "The Trustee is informed that Mr. Sai Manapragada was one of the founders of the Debtor and principally responsible for the creation of the intellectual property. Sai Manapragada is also one of the petitioning creditors. The Trustee is further informed that Sai Manapragada is a principal of the proposed buyer xStream Wireless Works. The Debtor allegedly made a loan to Sai Manapragada in the approximate amount of $63,000; however, Sai Manapragada asserts that the Debtor owes him in excess of $1 million on account of his employment contract and that Sai Manapragada may off-set that amount against the loan from the Debtor."

On January 9, 2013, this Court overruled objections to the Trustee's proposed auction sale of Debtor's assets free and clear of liens, as reflected in the order entered January 16, 2013 ["Lienfree Order," ECF #32]. A new bidder had appeared, and the in-court auction was set for January 22, 2013. But clearly, paying even the "distressed value" of assets of a now-defunct

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

Case: 12-48131    Doc# 46    Filed: 02/06/13    Entered: 02/06/13 15:08:48    Page 5 of 9

company at public auction was not what Mr. Manapragada had in mind.

On the eve of conducting Trustee's auction sale of Debtor's assets in court on January 22, 2013, on the last business day prior to a morning hearing, Mr. Costello, a third party's attorney of record in the Case yet ostensibly representing the Debtor, filed the motion to convert the Chapter 7 case to Chapter 11, citing new management and claiming vaguely to have a plan of reorganization in mind. The Trustee opposed the conversion motion and sought to proceed with the auction.

At the hearing on January 22, 2013, certain persons appeared through counsel and urged continuance of the auction sale pending the hearing on the motion to convert the Case to a Chapter 11, such as Robert O. Groover III, appearing pro se, Mr. Costello appearing as proposed special bankruptcy counsel on behalf of the Debtor and also on behalf of bidder xStream Wireless Works, Inc., and Robert A. Simon appearing on behalf of the asserted equity security holders.

The Court conducted substantial examination into the conduct of various persons including Mr. Costello (regarding who his clients were) and Mr. Manapragada. Prior to holding the auction, the Court heard from Mr. Manapragada to the effect that while he held a fiduciary position in Debtor, he had formed xStream for the specific purpose of operating the same business as Debtor, instead of Debtor.

The oral requests for a continuance were denied, and the auction proceeded. From an initial stalking-horse bid of $60,000 from Mr. Manapragada's creation xStream, the bidding started at $135,000 from Sigma Group and went to $351,000 with the winning bidder being Sigma Group.

As discussed above and supported by the Declaration of Jeremy Katz, there has been little cooperation with the Trustee in completing the sale authorized by this Court's order entered on January 23, 2013 ["Sale Order", ECF #41].

On February 5, 2013, certain shareholders of the Debtor, who filed no opposition to the Trustee's sale motion and who were not heard in their shareholder capacity at any of the hearings other than to request a continuance of the auction, filed a notice of appeal of the Auction Sale Order. ["Appeal", ECF #45"] These shareholders' counsel in the Appeal are Mr. Costello and

1871.107    6    Trustee's Opposition to Conversion
Case: 12-48131    Doc# 46    Filed: 02/06/13    Entered: 02/06/13 15:08:48    Page 6 of 9

Texas attorney Robert A. Simon.

**APPLICABLE LAW**

A person may not take advantage of the case he has set in motion as Mr. Manapragada has done, and then change position. In *In re R.S. Pinellas Motel Partnership,* 5 B.R. 269 (Bankr. M.D.Fla. 1980), Judge Paskay estopped a movant from seeking dismissal of a partnership bankruptcy case when he had participated advantageously in the case. A material issue was that he had caused a trustee to be appointed, who would not be paid if the case were dismissed. Here, Mr. Manapragada chose the Chapter 7 for his own reasons, hoping to profit by the emergency to liquidate fragile assets - obtaining them for a low price. He chose not to fund a Chapter 11 reorganization. The sale of the majority of Debtor's asset in Chapter 7, which was once perfectly fine with him and could had been enforced against him had he been the high bidder, would mean that the Case would essentially be over, with distributions as set forth in the United States Bankruptcy Code. Movant here proposes no plan, but no possible plan could be competitive for the best interests of creditors than the Trustee's auction sale. How could assets of this magnitude afford the costs of a Chapter 11, and not render the results to creditors illusory? Mr. Manapragada once bound himself to buy the assets by a bidding process, and should not be permitted to escape from liquidating the assets by that means. He and the shareholders who have joined with him chose not to win the bidding. It would make no sense to allow them to escape the consequences. It would offend public policy to invite competing bidders to do what it took to win the bidding, as part of making the bankruptcy system work, and then pull the rug out from under them by changing the rules after the bidding ended.

The Trustee opposes the conversion to Chapter 11 as in bad faith and an attempt to abuse the process of this Court. Mr. Costello presents the matter as if all that were required is a bare motion and the result will follow, contrary to *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S.Ct. 1105 (2007). The principles of *Marrama* are applicable to conversion from Chapter 7 to Chapter 11. *In re Levesque*, 473 B.R. 331 (BAP 9th Cir. 2012).

*Marrama* and *Levesque* teach that in applying Section 1106(a) of the United States Bankruptcy Code, the totality of the circumstances must be reviewed in order to determine

whether the Debtor remains a typical or instead an "atypical" or "bad faith" debtor, and to prevent abuse of process. Acquisition of control of Debtor's assets through stock and management control transactions is something that could once have been pursued, but the Trustee urges the Court to find that the attempt to do so now is in bad faith and would be an abuse of the process of this Court.

What has been happening in this Case speaks for itself in terms of finding "bad faith" on the part of those who would control the bankruptcy estate through the debtor-in-possession, and most specifically the operative "movant" in the conversion motion. But some caselaw about bad faith is of specific assistance. In *In re Holland*, 317 B.R. 402 (Bankr. C.D.Cal. 2004), debtors engaged in "a pattern of conduct calculated to frustrate [the trustee's] efforts to market and sell the property for the estate" and then tried to increase their exemption once the trustee obtained an offer. They were denied amendment of their exemptions because of bad faith. "Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *Id.* [citations omitted]. In pre-*Marrama* case *In re Maoucherhri*, 320 B.R. 880 (Bankr. N.D. Ohio 2004), debtor was denied reconversion to Chapter 13 because of his failure to cooperate with the trustee pursuant to his duties under 11 U.S.C. §521. The case is widely cited for this bad faith analysis. "At all times during the pendency of a bankruptcy case, a debtor is obligated to cooperate with the trustee regarding the administration of estate assets – not to take efforts which, effectively, thwart the trustee's ability to perform his statutory duties under §704." "Throughout the prosecution of a bankruptcy filing, a debtor must exhibit good faith conduct. Such conduct begins with the performance of a debtor's duties as mandated under §521 of the Bankruptcy Code" (citing the duties of cooperation and of turnover). *Id*. at 885.

**CONCLUSION**

The conflicts in this case are legion. There is no disinterested party who might navigate the Debtor through the choppy waters of a plan of reorganization. The Debtor has no counsel and as a corporation, cannot be a debtor-in-possession without counsel. Mr. Costello certainly cannot qualify to represent the Debtor. This is a case of "who's on first, what's on second, I don't know's on third." And there has been absolutely not cooperation with the Trustee. The Trustee's

1871.107     8     Trustee's Opposition to Conversion

Case: 12-48131    Doc# 46    Filed: 02/06/13    Entered: 02/06/13 15:08:48    Page 8 of 9

requests for estate assets have been continuously rebuffed.  The bankruptcy system will be disserved if the case where there is no business to reorganize is converted to chapter 11 and the Debtor is put into possession.  The motion to convert to chapter 11 must be denied.

Date:  February 6, 2013                          PINNACLE LAW GROUP LLP


                                                 By:   Jeremy W. Katz
                                                       JEREMY W. KATZ
                                                       Attorneys for Trustee
                                                       PAUL J. MANSDORF

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

1871.107

9

Trustee's Opposition to Conversion