JEREMY W. KATZ (SBN: 119418)
LINDA SORENSEN (SBN: 72753)
shierkatz RLLP
930 Montgomery Street, Suite 600
San Francisco, CA 94133
jkatz@shierkatz.com
Telephone: (415) 895-2895
Facsimile: (415) 520-5879

Attorneys for Trustee
PAUL J. MANSDORF

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>PICONGEN WIRELESS INC.,<br><br>Debtor. | Case No. 12-48131 RLE 7<br>Chapter 7<br><br>MOTION FOR ORDER APPROVING COMPROMISE OF CONTROVERSY WITH ROBERT O. GROOVER III (ATTORNEY LIEN)<br><br>Date: August 28, 2013<br>Time: 2:00 p.m.<br>Room: 201, Judge Efremsky |

Paul J. Mansdorf, Trustee of the above-named Debtor's bankruptcy estate (the "Trustee"), hereby moves the Court for an Order authorizing him to enter into a compromise of controversy with Robert O. Groover III ("Groover"), Debtor's patent counsel, resolving Adversary Proceeding No. 13-04110, *Mansdorf v. Groover et al.*, on the terms set forth herein and in the Settlement Agreement attached as Exhibit "A" to the declaration in support of the Motion. The proposed compromise ends litigation concerning liens against sale proceeds of $150,000 after purchase by Sigma Group of substantially all of the assets of the bankruptcy estate.

The Motion is made pursuant Bankruptcy Code § 9019, B.L.R 9014-1(c)(2), the notice of motion, the motion, the supporting declaration, and any evidence that the Court requests or requires prior to or at the hearing on the Motion.

Terms. In summary, the compromise provides for allowance and payment of Groover's claims as follows: $25,000 as an unsubordinated secured claim to be paid promptly upon the

shierkatz RLLP
930 Montgomery St., Fl 6
San Francisco, CA 94133
(415) 895-2895

1871.107                                1                           COMPROMISE MOTION

Case: 12-48131    Doc# 74    Filed: 08/07/13    Entered: 08/07/13 10:04:37    Page 1 of 8

approval of the compromise, and the balance as a secured claim subordinated to allowed administrative expenses and allowed priority claims, but ahead of general unsecured claims until paid in full. In addition, Groover's $2,236 priority expense of administration will be allowed and paid upon the approval of the compromise. (Groover advanced funds to preserve the patents.)

Analysis. There exists a <u>bona fide</u> and hotly contested dispute between the Trustee and Groover concerning whether Groover's attorney's lien is valid as against a bankruptcy trustee. See AP #13-04110. The dispute's resolution was uncertain, but that it was certain that the cost would be substantial. This compromise proposes to acknowledge the greater equities in favor of Groover's <u>non-insider</u> claim, as opposed to the <u>insider claims of persons who obtained his services to the Debtor by assurances that it was secured by an attorney's lien</u> against the patents. The practical effect is that Groover will receive all of the distributions that might have been available for the payment of non-priority prepetition claims (including Groover's) if the Trustee prevailed against Groover, while avoiding litigation expenses that would erode those potential distributions. And litigation concerning the disputed insider claims, the expense of which would have exhausted all funds, is also avoided.

In support of the Motion, the trustee respectfully represents as follows:

On October 3, 2012, an involuntary chapter 7 bankruptcy petition was filed against the Debtor by petitioning creditors Ronald Moeckel, Ankit Sahu, Max Lightfoot, and Sai Manapragada. ECF #1. Patrick Costello of Vectis Law Group represented the petitioning creditors. Dale Kluesing, signing as the Debtor's CEO, executed a stipulation for entry of an order for relief which was filed on October 26, 2012. ECF #5. An order for relief was entered that same day. ECF #6.

The assets of the Debtor consisted primarily of intellectual property. On November 30, 2012, the Trustee filed his motion to sell substantially all of the estate's assets free and clear of asserted liens to xStream Wireless Works, Inc. ("xStream Wireless") for $60,000 cash plus a waiver of certain claims against the estate. ECF #s 15, 16, and 17. (The original offer, which the Trustee rejected, was $30,000 for an expedited sale. Mr. Manapragada, one of the petitioning creditors, was also the principal of xStream Wireless and one of the founders of the Debtor.

Prepetition, Mr. Manapragada had been open about the fact that he intended to put the Debtor into bankruptcy in order to acquire its assets.) The sale was subject to overbidding. The hearing on the sale and any overbids was scheduled for January 9, 2013.

Groover filed Proof of Claim No. 1-1 for $106,756 as a prepetition secured claim, and $2,236 as a priority expense of administration (the "Claim").

On January 4, 2013, Groover, the Debtor's intellectual property counsel located in Texas, filed his opposition to the proposed sale. ECF #28. He alleged, among other things, that he had an attorney's lien against all of the intellectual property, that Mr. Manapragada had unclean hands, that some of the assets were in the possession of Mr. Manapragada, and that Mr. Manapragada had diverted estate assets for his own benefit. Mr. Groover also made his own offer to purchase the assets. ECF #27.

On January 7, 2013, the Trustee filed his reply to Mr. Groover's opposition to the sale. ECF #29. The Trustee pointed out that Mr. Groover's alleged attorney's lien was the subject of a bona fide dispute, that it was the Trustee's duty to liquidate assets of the estate for the benefit of creditors, that the sale was subject to overbidding, and that Mr. Groover's purchase offer was not acceptable to the Trustee.

On the morning of January 9, 2013, Patrick Costello of Vectis Law Group now representing xStream Wireless filed a declaration which included documents in support of the sale motion. ECF #30.

Prior to the January 9, 2013, hearing on the sale motion, Jeremy W. Katz of Pinnacle Law Group LLP, the Trustee's general counsel, had been contacted by Mahesh Bigala of Sigma Group. Mr. Bigala informed Mr. Katz that Sigma Group was interested in making an overbid for the assets. Mr. Katz discussed with Mr. Bigala the procedures required for qualifying as an overbidder.

The sale motion was heard on January 9, 2013. Mr. Groover appeared personally to oppose the motion and promote his offer. Eric Nyberg appeared on behalf of Sigma Group. Mr. Bigala, Sigma Group's principal, flew in from New Jersey to attend the hearing and overbid on behalf of Sigma Group. Mr. Costello appeared for the stalking horse buyer, xStream Wireless.

SHIERKATZ RLLP
930 Montgomery St., Fl 6
San Francisco, CA 94133
(415) 895-2895

1871.107                                   3                        COMPROMISE MOTION

Case: 12-48131    Doc# 74    Filed: 08/07/13    Entered: 08/07/13 10:04:37    Page 3 of 8

The Court overruled Mr. Groover's opposition to the sale, ordered that the sale was to be free and clear of liens, and continued the in-court auction to January 22, 2013. Minutes of January 9, 2013, and ECF #32.

On January 18, 2013, on the eve of conducting the Trustee's auction sale of Debtor's assets in court on January 22, 2013, on the last business day prior to a morning hearing, Mr. Costello of Vectis Law Group, now acting as proposed special bankruptcy counsel for the Debtor, filed a motion to convert the Chapter 7 case to Chapter 11, citing new management and claiming vaguely to have a plan of reorganization in mind, requested that the Trustee not proceed with the auction. ECF #34. Later on January 18, 2013, the Trustee filed a pleading in further support of the auction sale and preliminarily objecting to the Debtor's motion to convert. ECF #37.

On January 22, 2013, the Court listened to live testimony, denied the request to delay the auction until after the conversion motion was heard, and conducted the auction. (The motion to convert was later withdrawn, ECF #56, the Court having stated the likelihood that it would be denied and the Trustee having filed further opposition, ECF #s 46, 47, 48, 49, 50, and 51.) The Court started the bidding at $135,000, the value placed by the Debtor in its Schedule B for the patent systems. Sigma Group offered $135,000. xStream Wireless, the only other bidder, continued the bidding and the auction ended with Sigma Group being the successful bidder at $351,000. When the Court asked xStream Wireless if it wanted to make a back-up offer, xStream Wireless declined. On January 23, 2013, the Court entered its order authorizing the sale of the Auctioned Assets to Sigma Group free and clear of liens. ECF #41.

There followed a dispute between the Trustee and Sigma Group about payment of the purchase price and whether or not the Trustee had unperformed obligations to identify and deliver the Auctioned Assets to Sigma Group. Sigma Group also contended that persons associated with the Debtor, xStream Wireless, and/or the Shareholder Group were interfering with Sigma Group's purchase of the Auctioned Assets, and were using the Auctioned Assets and frustrating the sale. The Trustee filed an Adversary Proceeding against Sigma Group to collect the purchase price and to determine whether it was necessary and appropriate to amend the sale order to permit the Trustee to regain the Auctioned Assets and re-sell them to mitigate damages. The Trustee entered

SHIERKATZ RLLP
930 MONTGOMERY ST., FL 6
SAN FRANCISCO, CA 94133
(415) 895-2895

1871.107                                          4                                 COMPROMISE MOTION

Case: 12-48131    Doc# 74    Filed: 08/07/13    Entered: 08/07/13 10:04:37    Page 4 of 8

into a compromise with Sigma Group and received a compromise payment of $150,000 for the Auctioned Assets. ECF #64 (Sigma Group compromise approval order). In doing so, the Trustee had arrived at a belief that xStream Wireless may have bid up the Auctioned Assets on January 22, 2013, with the intention of creating a situation where the combination of Sigma Group's having bid so much and the difficulties in obtaining the intended benefits of the sale would cause the harm that the bankruptcy estate experienced.

The Trustee filed Adversary Proceeding No. 13-04110 in order to determine the claims of lien that had been transferred to the proceeds of sale. Dale Kleusing stipulated to a judgment that he had no lien valid against the Trustee. Ruth Donohue on behalf of the Averett Family Trust also stipulated to such a judgment.

Groover, representing himself, filed an answer in argumentative form, attaching numerous exhibits. The Trustee contended that the answer should be stricken for failure to comply with the Federal Rules of Bankruptcy Procedure, and considered filing a motion for judgment on the pleadings, because the Trustee considered the possibility that all the matter included in Groover's answer would demonstrate to the Court that there was no defense to the Trustee's complaint and that Groover had no lien valid against a trustee in bankruptcy of his client. The opposing sides to the controversy exchanged substantial authorities and argument on an informal basis, but neither side convinced the other.

The Trustee is informed that Groover would not have agreed to a compromise on terms any less favorable than those proposed herein. Groover felt strongly that he would prevail, and believed that the Court would not reward the "knavery" of the people who obtained his services, including the group who he believed manipulated the failure of Picongen (about which he made previous filings in the Case and supplemented those filings in his answer to the Trustee's complaint). Groover stated that he was ready to appeal any adverse outcome of the litigation.

In the Trustee's view, the following were facts in the Trustee's favor in the litigation with Groover: Groover had a written representation agreement with the Debtor that contemplated that the Debtor would pay for patent prosecution services as they were incurred. There was no language granting a lien. Groover explained that the Debtor paid for a while, but then was unable

SHIERKATZ RLLP
930 Montgomery St., Fl 6
San Francisco, CA 94133
(415) 895-2895

1871.107                                    5                         COMPROMISE MOTION
Case: 12-48131   Doc# 74   Filed: 08/07/13   Entered: 08/07/13 10:04:37   Page 5 of 8

to pay Groover's past invoices or for the remaining services that would be necessary. Groover represented that he was later promised a lien on the patents to secure his already accrued and further services. Groover has presented evidence that such discussions did exist. Groover has not claimed nor presented any evidence that he went through the steps required by the California Rules of Professional Conduct to obtain an interest adverse to his client, instead asserting that he is not bound by California's rules. Groover has not presented a written grant of security, recognizable as such. When Groover unilaterally filed a UCC-1 financing statement, he filed it in California whereas the Debtor is a Delaware corporation.

Notwithstanding the Trustee's view of the merits of the litigation, litigation about attorney liens is by no means certain of outcome.

While the Trustee faced likely disproportionate costs of the litigation with Groover, the Trustee also faced a quandary if he prevailed against Groover and as a result Groover was allowed a substantial general unsecured claim. The other general unsecured proofs of claim have been filed by insiders, members of the Board of Directors, whose claims may be recharacterized as equity or be subject to other challenges. The Trustee had substantial issues with each of them that would require claim objection litigation. Sai Manapragada (a principal officer in addition to serving on the Board of Directors) filed claims 4-1 and 9-1 for $1,104,000. The others in his Board of Directors group, Messrs. Sahu, Lightfoot, and Moeckel (6-1, 7-1, 8-1) filed claims stating that they had converted to equity interests. Mr. Yempati (5-1) filed as an "investment" with no amount stated. And Debtor's general counsel (and member of its Board of Directors) David E. Bartlett filed a claim for $519,069.00 including for services as far back as 2006. Interestingly, part of Groover's proposed litigation proof was an email from David E. Bartlett confirming that Groover had been promised a lien. [AP 13-04110, ECF #13 page 14, see also page 24.]

The litigation over Mr. Manapragada's proof of claim, alone, was likely to be disproportionate with the amount of funds available to general unsecured creditors if the Trustee prevailed against Groover's claim of lien. The file in this Case is full of questionable activities

SHIERKATZ RLLP
930 Montgomery St., Fl 6
San Francisco, CA 94133
(415) 895-2895

1871.107

6

COMPROMISE MOTION

Case: 12-48131    Doc# 74    Filed: 08/07/13    Entered: 08/07/13 10:04:37    Page 6 of 8

during the Case on his behalf, and serious allegations by others concerning his prepetition actions as a principal officer of Picongen that were adverse to the company's interests.

In a choice between the proposed compromise, and instead litigating with Groover to a result, winning the litigation was likely to be a pyrrhic victory, given the entirety of the circumstances.

F.R.B.P. 9019(a) provides, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct."

A bankruptcy court has great latitude in approving compromises, but they must be fair and equitable. When making its decision, a court should consider: 1) the probability of success on the merits; 2) the difficulty in collecting a judgment; 3) the complexity of the litigation involved and the expense, inconvenience, and delay associated with trial; and 4) the paramount interests of creditors. *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986); *Woodson v. Firemen's Fund Insurance Company (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). These factors favor the compromise as set forth above.

Factor 1: The Trustee believes that Groover did not obtain a valid attorney's lien although midway through his services he and certain individual Board Members may have intended that he be given one retroactively. There is a way to obtain an attorney's lien against the assets he was working to improve, but Groover presents no evidence that he was aware of or undertook the required steps. Appeals to "equity" do not usually work in such circumstances. But this kind of litigation is not completely certain of outcome. It is not entirely certain, for one thing, that Groover will not be able to introduce evidence of additional documentation supporting a "secret" attorney's lien to some extent. .

Factor 2: The Trustee holds the funds, but is unable to complete administration of the Case until the lien litigation is resolved.

Factor 3: Although the litigation might not appear complex at first blush, a review of Groover's "answer" reveals the potential of great expense. Dispositive motions and/or trial and

SHIERKATZ RLLP
930 MONTGOMERY ST., FL 6
SAN FRANCISCO, CA 94133
(415) 895-2895

appeals could result in the case not being fully-administered for two or three more years, and the cost associated therewith would likely ensure that the estate was administratively insolvent. This factor favors settlement. Then there is also the problem, if the Trustee prevails and if the estate then has funds for general unsecured creditors, what will be the cost of determining which insiders and to what extent they would share the unsecured pool with non-insider Groover.

Factor 4: The Trustee believes that it is not in the creditors' best interests to consume the bankruptcy estate by litigation investment, and that the compromise's result should be considered sufficient in view of the risks and the costs to the estate. Some of the likely objectors are the very same people who had they abided by the original auction results, and wanted the Trustee to collect as much as possible from Sigma Group and thereby have more funds for general unsecured creditors, their actions would have been far different than what the Trustee has observed them to be.

It is not necessary that each factor be satisfied as long as the factors as a whole favor approving the settlement. *In re WCI Cable, Inc.,* 282 B.R. 457, 473-74 (Bankr. D. Or. 2002). The additional expenses and costs that it will take to try the Action and pursue or defend against appeals, and the time it will take to do so, more than outweigh any prospect of improving upon the proposed compromise, which the Trustee believes is reasonable under the totality of the circumstances.

WHEREFORE, the Trustee requests that the Court approve the proposed compromise pursuant to the terms set forth in this Motion and the settlement agreement attached to the supporting declaration, and grant any additional relief that it deems appropriate.

Dated: August 7, 2013      shierkatz RLLP

By: *Linda Sorensen*
LINDA SORENSEN
Attorneys for Trustee Paul J. Mansdorf

SHIERKATZ RLLP
930 MONTGOMERY ST., FL 6
SAN FRANCISCO, CA 94133
(415) 895-2895

1871.107                                8                         COMPROMISE MOTION

Case: 12-48131    Doc# 74    Filed: 08/07/13    Entered: 08/07/13 10:04:37    Page 8 of 8